IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER LIVENGOOD,
    Plaintiff,

v.                                                                   Case No. 18-2611-JTM

ANDREW SAUL,
Commissioner of Social Security
    Defendant.


MEMORANDUM AND ORDER

Christopher Livengood applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 on March 25, 2015. The Commissioner of Social Security denied his application on June 17, 2015 upon initial review (Tr. 222-26), and Livengood sought review by an Administrative Law Judge (ALJ). Following a hearing on October 12, 2016 (Tr. 3-43), the ALJ determined that Livengood was not disabled within the meaning of the Act. (Tr. 65-77). The decision of the Commissioner became final when the Appeals Council declined Livengood's request for review. (Tr. 44-46) on September 12, 2018. (Tr. 1-6).

Livengood then filed this appeal, raising two arguments. First, he contends that the ALJ erred in adopting a residual functional capacity (RFC) which is not supported by the record. (Dkt. 11, at 20-23). Second, the ALJ erred in determining at Step 5 that there was work he could perform. (*Id*. at 24-25).

Plaintiff-claimant Livengood was born on May 5, 1986, and has stated that he became disabled beginning September 13, 2014 due to a depressive disorder. He has a high school education, and has previously worked as a cabinet maker, wipe stainer, and meat trimmer, which are considered unskilled positions.

The ALJ found that Livengood had the severe impairments of (1) affective disorder, variously diagnosed as mood disorder not otherwise specified; (2) major depressive disorder, and/or bipolar disorder; (3) anxiety related and/or trauma related disorder, variously diagnosed to include unspecified anxiety disorder and/or post-traumatic stress disorder; and (4) personality and impulse-control disorder, variously diagnosed to include cluster B traits. (Tr. 68). These impairments, individually and in combination, did not meet or exceed any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 69-71). The ALJ concluded that Livengood retained the RFC to do a full range of work at all exertional levels, except that he cannot climb ladders, ropes or scaffolds, kneel or crawl. He cannot be exposed to hazardous conditions (including moving machinery or motor vehicles), loud and unexpected noises, extreme cold, or vibrating surfaces. He can frequently reach and manipulate bilaterally, but cannot use air or vibrating tools. He can do simple, routine, repetitive tasks and engage in routine decision-making, but he should have no contact with the public, and only occasional contact with co-workers and supervisors. Contact with the latter should be brief and limited to superficial interactions, such as daily pleasantries or communications directly related to work activities.

Such an RFC, the ALJ found, would prevent Livengood from doing his past work. However, based upon the testimony of a vocation expert, the ALJ determined that the were jobs in the national economy that Livengood could still perform, including

> (1) stubber, D.O.T. Code 222.687-034, a medium unskilled position (SVP 2), with approximately 36,250 jobs nationally; (2) spiral binder, D.O.T. Code 653.685-030, a medium unskilled position (SVP 2), with approximately 42,900 jobs nationally, and (3) marker, D.O.T. Code 209.587-034, a light unskilled position (SVP 2), with approximately 714,000 jobs nationally.

(Tr. 77).

The detailed facts of the case, which are incorporated herein, are set forth independently in the ALJ's opinion, and the briefs of Livengood (Dkt. 11) and the Commissioner (Dkt. 12, at 3-7).

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g). The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d

1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment does

not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, \*2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, \*2 (citing *Williams*, 844 F.2d at 751). The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084. The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

The court finds that the ALJ's assessment of the claimant's RFC was not erroneous and is supported by substantial evidence. The ALJ did not deny that Livengood's mental issues created difficulties with his social interactions; he agreed such difficulties existed and made allowance for them in the RFC. Acting as the finder of fact, the ALJ made appropriate judgments, drew reasonable inferences, and weighed the evidence as a whole; his conclusion that the extent of the social limitations did not preclude Livengood from employment was not erroneous. Given the deferential standard of review, the court finds that the decision as to the plaintiff's RFC should be affirmed.

In reaching his conclusions, the ALJ balanced the opinions of a reviewing state agency psychologist J. Edd Bucklew (Ph.D.), plaintiff's therapist Kari Miller (L.M.F.T.), and treating nurse Elizabeth Garton (A.P.R.N.). Ms. Miller wrote a letter on October 10, 2016 stating that she had met Livengood in a hospital emergency room, that he had suicidal ideations, that his mental conditions "debilitate him greatly," and that "finding work is impossible." (Tr. 730). Nurse Garton wrote a letter on the same date stating that based on her experience, Livengood "struggles with impulse control [and] aggressive behaviors," and that these "interfere with his ability to gain and maintain gainful employment." (Tr. 731).

Dr. Bucklew evaluated Livengood's medical records in June, 2015, and found that the plaintiff's description of his mental problems was "partially credible," with "some limitations on daily living [and] social functioning." (Tr. 217). He concluded:

> Treating source records show non-compliance with medications and suspected malingering for disability. Accordingly, credibility of claimant's allegations is reduced. Claimant has worked successfully in the past per psychological evaluation /intake report of 2014, and he continues to seek employment, but reported that he does not dress appropriately does not like to make only applications, etc., and now there is concern that he has lower motivation due to seeking disability.
>
> Overall, with abstinence from substance abuse, claimant is not limited for remembering, understanding, and completing instructions.

(*Id.*) If Livengood stopped his substance abuse and adhered to his treatment, Dr. Bucklew did not find that Livengood was precluded from employment, only that he "would still need to avoid socially complex or distracting environments." (*Id.*)

The ALJ permissibly weighed and distinguished between the proffered evidence. He noted that Dr. Bucklew gave "a detailed narrative describing the basis of his opinions from the evidence available to him," and found that "the record at the hearing level remains generally consistent with [Bucklew's] assessment." (Tr. 75). In contrast, the statements of Ms. Miller and Nurse Garton, as treating sources but not acceptable medical sources under the regulations, *see* 20 C.F.R. § 416.913(a), were given limited weight. The ALJ noted that:

> extreme and marked limitations and inability to work at substantial gainful activity level is not supported in the examination findings of any medical provider of record, where outpatient treatment was routine and self-terminated (*See generally*, Ex. B1F; B7F, *see specifically*, Ex. B1F/1; B7F/9-10, 49 [Tr. 366, 633-64, 704]) and episodic brief inpatient stays reflected improvement with compliance and, at times, suspicion of "malingering for disability" (*See e.g.,* Exh. B2F/9, 11-12, 14-15; B4F/49 [Tr. 395-401, 704]). Further, mental status examinations during physical medicine encounters were generally within normal limits, even if the claimant expressed depressed mood or suicidal ideation was present (*See, e.g.,* Exh. B2F/3; B3F/39; B4F/62, 73 [Tr. 389, 453, 520-22, 531-32]).

(*Id*). An ALJ may appropriately give greater weight to the opinion of a reviewing state agency doctor over a treating source where, as here, he sets out valid reasons for such a conclusion. *See* 20 C.F.R. § 416.926(e)(2)(i).

Of course, the plaintiff takes exception to Dr. Bucklew's reference to "suspected malingering."(Tr. 217). But this suggestion is not an unfair summation of the record (*see* March 10, 2015 Discharge Summary, Dr. Tamon Paige (M.D.), Tr. 400), and in any event the ALJ ultimately rendered his decision based on the available medical evidence as whole, along with the record from the hearing. (Tr. 75-76).

7

Similarly, the plaintiff stresses that he suffers from an "impaired intellect," that the RFC should account for his limitations on concentration, persistence, and pace, and that the ALJ should have ordered a consultative examiner. (Dkt. 11, at 22-23). There are indications in the record that Livengood does have limited mental skills (Tr. 499, 507). However, while the most recent (August 19, 2016) evaluation refers to Livengood as having "limited" judgment, its author Dr. Shakila Tanjim (M.D.) also states: "R/O [rule out] Mild intellectual disabilities," and evaluates Livengood's "Cognition" as showing "Intelligence – average. Attention span and concentration – good. Good command of language and fund of general information."

Further, as the ALJ noted, in his daily personal life Livengood cares for himself independently and without reminders, including taking medications and preparing meals, shopping and riding in a vehicle. He handles some of his own finances and reads for pleasure. (Tr. 70). Further, the ALJ noted that Livengood was able to read and follow prescription instructions, which was notable "particularly given the wide range of medications prescribed longitudinally." (Tr. 74).

The ALJ was further presented with Livengood's employment history, where the problem was the plaintiff's antisocial impairments, not his cognitive abilities. He was fired from one job in 2015 because he did not show up or call in, and fired from another in 2014 because he got into an argument with a co-worker. This is consistent with Livengood's own hearing testimony, where he stated he could not work because "[i]f I get over stressed I tend to blow up, cause a scene, and maybe even get into a fight." (Tr.

25, 73).[1] He did *not* attribute his inability to work to any inability to understand his jobs. As the ALJ noted, Livengood was personally observed by an agency interviewer to have no difficulty in understanding, coherency, or concentration. (Tr. 286). The ALJ did not err in finding that Livengood had only a mild limitation in understanding, remembering and applying information.

And in any event the RFC adopted for the plaintiff limits him to unskilled work – work that is simple, routine, and repetitive and which requires little in the way of concentration. The decision of whether to order a consultative examination is a matter within the ALJ's discretion. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990) (the ALJ "has broad latitude in ordering a consultative examination"); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir.1993) (stating ALJ has discretion to order consultative examination). Under the circumstances of the case, the ALJ possessed a sufficiently developed record that the decision not to order a consultative examination was not an abuse of discretion. In sum, the RFC adopted by the Commissioner is supported by substantial evidence in the record.

Finally, the court finds no error in the ALJ's determination at step five that there were other jobs which Livengood could perform in the national economy. The plaintiff argues that the RFC adopted by the Commissioner would preclude him from such jobs. However, the plaintiff's brief (Dkt. 11, at 24-25) only points to one job — that of spiral binder — as being barred, as it is accompanied by loud noises and exposure to moving

---

[1] As noted elsewhere, the ALJ separately found these antisocial tendencies were managed by outpatient counseling and medication, rather than any lack of comprehension or understanding. (Tr. 73).

9

parts. As noted earlier, the ALJ also identified three specific jobs which Livengood could perform, including those of stubber or marker, both which exist in significant numbers in the national economy. Substantial evidence supports the ALJ's step five conclusion.

IT IS THEREFORE ORDERED this day of March, 2020, that the judgment of the Commissioner is affirmed.

J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE